IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RUDOLPH COLE,                               No   C-04-0996 VRW

    Plaintiff,                              ORDER

    v

TEAMSTERS LOCAL 70,

    Defendant.
_____/

        The court's previous order in this case, Doc #28, granted summary judgment to defendant on various grounds with respect to several aspects of the six discrete grounds for relief in plaintiff's complaint. The court assumes familiarity with that order and, in particular, the factual background recited therein. At the end of that order, the court set forth plaintiff's remaining viable arguments:

> In sum, plaintiff may proceed on two claims that defendant did not fairly represent him: first, in connection with the computer tracking information proceeding, and second in connection with defendant's failure to secure for plaintiff copies of the private investigator's reports. Both may be amenable

> to disposition on summary judgment, but at
> present the court has neither sufficient facts
> nor adequate briefing to address these two
> aspects of plaintiff's claim.

Doc #28 at 13:11-18. Defendant has filed a further motion for summary judgment addressing these two issues, Doc #35, which has been briefed and is now ripe for decision. Because the court determines that this matter is suitable for decision without oral argument, the hearing scheduled for May 5, 2005, is VACATED. See Civ L R 7-1(b). For the reasons that follow, defendant's motion is GRANTED.

I

A

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp v Catrett, 477 US 317, 322-23 (1986). When the moving party has the burden of proof on an issue, the party's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. Calderone v United States, 799 F2d 254,

2

258-59 (6th Cir 1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence supporting its claim that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id at 249.

B

As the court explained in its prior order, this question presented in this case is whether defendant (plaintiff's union) breached the duty of fair representation it owed plaintiff by virtue of plaintiff's membership in the union. The Ninth Circuit has explained:

> Whether in a particular case a union's conduct is "negligent", and therefore non-actionable, or so egregious as to be "arbitrary", and hence sufficient to give rise to a breach of duty claim, is a question that is not always easily answered. A union acts "arbitrarily" when it simply ignores a meritorious grievance or handles it in a perfunctory manner, see [<u>Vaca v Sipes</u>, 386 US 171, 191 (1967)], for example, by failing to conduct a "minimal investigation" of a grievance that is brought to its attention. See <u>Tenorio v National Labor Relations Board</u>, 680 F2d 598, 601 (9th Cir 1982). We have said that a union's conduct is "arbitrary" if it is

"without rational basis," see <u>Gregg v Chauffeurs, Teamsters and Helpers Union Local 150</u>, 699 F2d 1015, 1016 (9th Cir 1983), or is "egregious, unfair and unrelated to legitimate union interests."  See <u>Johnson v United States Postal Service</u>, 756 F2d 1461, 1465 (9th Cir 1985).  In <u>Robesky v Qantas Empire Airways Ltd</u>, 573 F2d 1082, 1089-90 (9th Cir 1978), we held that a union's unintentional mistake is "arbitrary" if it reflects a "reckless disregard" for the rights of the individual employee, but not if it represents only "simple negligence violating the tort standard of due care."  In <u>Dutrisac v Caterpillar Tractor Co</u>, 749 F2d 1270, 1274 (9th Cir 1983), we concluded that unintentional union conduct may constitute a breach of the duty of fair representation in situations where "the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim."

There are some significant general principles that emerge from our previous decisions.  In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct. * * *.

We have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance.  To the contrary, we have held consistently that unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances.  We have said that a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance, in interpreting particular provisions of a collective bargaining agreement, or in presenting the grievance at an arbitration hearing.  In short, we do not attempt to second-guess a union's judgment when a good faith, non-discriminatory judgment has in fact been made.  It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued.

4

**Peterson v Kennedy**, 771 F2d 1244, 1253-54 (9th Cir 1985) (some citations omitted).

## II

### A

The first issue concerns defendant's failure to prevent the introduction at plaintiff's termination grievance hearing of evidence derived from a computer tracking device known as a "DIAD board." Marty Frates ("Frates"), who represented plaintiff during his termination grievance proceedings, objected to the use of information gathered through the DIAD board. See, e g, Frates Supp Decl (Doc #37) ¶3. The admissibility of that evidence was the subject of an appeal taken before the final hearing on September 11, 2003. See Frates Decl (Doc #23) ¶¶7-11. Objecting and pursuing the appeal was, it appears, all that Frates could do in the context of the union grievance process. Moreover, there is no indication that Frates failed to pursue plaintiff's appeal diligently. Accordingly, plaintiff has failed to establish the existence of a genuine issue of material fact with respect to whether defendant's representation of him was deficient at all (let alone a breach of the duty of fair representation) with respect to the DIAD board issue.

### B

The second issue concerns Frates' failure to secure plaintiff access to reports prepared by a private investigator on behalf of plaintiff's employer, UPS. The documents in question are rather ephemeral: In his deposition, when plaintiff was asked

5

about these reports, he was generally nonresponsive:

> Q: Let me have this marked as Exhibit D. Tell me when you are done. Just look over them generally.
>
> A: Okay.
>
> Q: Are those the investigator reports you are referring to?
>
> A: No.
>
> Q: They are not?
>
> A: No.
>
> Q: That was not what you were talking about in the complaint?
>
> A: No.
>
> Q: What are you talking about? What do the reports look like then?
>
> A: He read something in the hearing that I never heard before.
>
> Q: He read something?
>
> A: Yes, that was pertinent information that we needed.
>
> Q: It's not contained in Exhibit D?
>
> A: No.
>
> Q: Then you need to tell us something about what he read. Otherwise we can't even identify what you are talking about.
>
> A: If I'm not mistaken, I believe some of it was on the tape. I believe some of it was on the tape he read [referring to the audiotape of the September 11, 2003, hearing].
>
>                         * * *
>
> Q: What did [the report] look like then?
>
> A: I don't know. It was something he was reading. He was reading his reports.
>
>                         * * *

```
        Q:   It appeared he was reading from something.

        A:   Yes.

        Q:   So that's what you referred to as the
             investigator's reports?

        A:   Yes.
```

Cole Depo (Doc #36 Ex A) at 39:1-41:8.

When later asked to review the hearing transcript to identify a passage where the reports in question were being read, plaintiff was able to identify only one brief instance. Id at 151-56. Defense counsel asked him at the end of the deposition to augment this response by letter, but plaintiff did not do so. Pau Decl (Doc #36) ¶¶2-3. Plaintiff asserts in his opposition that he "[r]ecently * * * secured the investigator[']s reports from a separate lawsuit filed against United Parcel Service." Pl Opp (Doc #38) at 6:1-2. Plaintiff has not, however, put these documents before the court.

It is evident that defendant has made substantial but unsuccessful efforts to secure the reports that plaintiff has put in issue. Plaintiff claims to have these reports, but he has not submitted them to the court. Under these circumstances, the court can only conclude that the reports -- if they exist at all -- are either not favorable to plaintiff or do not create a genuine issue of material fact whether defendant breached its duty of fair representation in failing to secure the reports in advance of the September 11, 2003, hearing. Accordingly, summary judgment must be GRANTED in defendant's favor on this issue as well.

/

/

7

### III

In sum, defendant's motion for summary judgment (Doc #35) is GRANTED. The clerk is DIRECTED to close the file and TERMINATE all pending motions.

IT IS SO ORDERED.

                                        /s/

                                        VAUGHN R WALKER

                                        United States District Chief Judge